[Civ. No. 2592.    Second Appellate District, Division One.—December 18,
1918.]

## EVALINA SHULER, Appellant, v. JOHN Y. CORL, Respondent.

STATUTE OF LIMITATIONS—DATE OF COMMENCEMENT OF ACTION—SILENCE
OF RECORD—PRESUMPTION ON APPEAL.—Where the record on appeal
fails to show when the original complaint was filed, it will be
assumed, in the absence of a different showing by the appellant,
for the purpose of considering the question whether the causes
of action set out in the amended complaint are barred by the
statute of limitations, that the date of the filing of the amended
complaint was the date of the commencement of the action.

CONTRACT—EMPLOYMENT FOR INDEFINITE PERIOD—NATURE OF CONTRACT
—ACCRUAL OF PAYMENTS.—A contract for personal services for as
long a period as the servant should choose to work for the master,
whether a month or years, and to pay therefor a reasonable sum in
excess of the monthly salary the servant was then receiving in an-
other employment, is a contract from month to month, and the
various sums of money which would become due for such services
accrue at the end of each month during the period of employment.

ACTION FOR SERVICES—PLEADING—FAILURE TO SHOW MUTUAL, OPEN,
AND CURRENT ACCOUNT.—In an action for services rendered under
such a contract, a mutual, open, and current account is not shown
to have existed, so as to make the four-year statute of limitations
applicable, by the allegation in the complaint that at various times
payments were made on account, but that there was never any
specific understanding or agreement as to just when the services
were to be paid for, except payment was to be made in full
upon quitting the service.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Charles Wellborn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

George M. Harker for Appellant.

Ernest B. Coil for Respondent.

JAMES, J.—Plaintiff sued to recover a sum of money in
excess of five thousand dollars as compensation for services
alleged to have been rendered to the defendant.   A demurrer

was sustained to the second amended complaint; plaintiff declined to amend further. Judgment followed in favor of the defendant, from which judgment this appeal is taken.

By the demurrer the defendant particularly urged that the alleged causes of action set out in the amended complaint were barred by both the two year and four year limitation. (Code Civ. Proc., secs. 337, 339.) It was further urged that the contract as claimed by the plaintiff was void under the statute of frauds as being one which was not to be performed within a year from the making thereof. It cannot be determined from the record presented when the original complaint was filed in the action, but it does appear that the second amended complaint was filed on the seventh day of November, 1914. In the absence of a different showing made by appellant, we must assume, for the purpose of considering the question relating to the statute of limitations, that this was the date of the commencement of the action. The amended complaint may not be exhibited as an example of concise pleading; its allegations extend to much detail, containing many matters of recital, and disjunctive assertions. After alleging the residence of the parties to be in the county of Los Angeles, paragraph 2 of said complaint proceeds as follows: ''That, to-wit: within one (1) month before the first of May, 1900, the plaintiff, then working for a drug company at a salary of thirty ($30.00) dollars per month at the city of Amsterdam, state of New York, received through the United States mail a written offer from the defendant, then residing at Spencer, state of South Dakota, to engage the plaintiff's labor and services in general house work for as long a period as the plaintiff should choose to work for defendant, whether a month or years, and in said letter defendant promised to pay plaintiff for said work a reasonable sum, and specifically promised to pay her in excess of what she was receiving at that time, to-wit: thirty ($30.00) dollars per month, exclusive of her lodging and board, which reasonable value for said work, throughout all times mentioned in this complaint, the plaintiff has claimed and still alleges to be forty ($40.00) dollars per month, exclusive of her said room and board.'' The next allegation recites that the plaintiff accepted the offer of the defendant and went, on the first day of May, 1900, to the place of residence of the defendant, then in South Dakota, and entered upon the performance of the services, and that she

continued to work for the defendant up to May 31, 1912, except during the months of February and April of that year; she then alleges that defendant changed his residence several times after she entered upon her work with him; that he resided in South Dakota until September 1, 1900; that he resided at Minneapolis from September 1, 1900, to October 1, 1903; that he resided at Fairmont, Los Angeles County, from October 1, 1903, to May 31, 1912. It is then alleged that "there was never any specific understanding or agreement between the plaintiff and defendant as to just when said services were to be paid for, except that she was to have her pay in full upon quitting his services; that from as early as the first year of her said employment plaintiff requested defendant to pay, at odd times, the specific times she cannot now recall, what he was able to pay, and plaintiff has since said first year, throughout all the years aforesaid, times too numerous to mention and the dates and places of which she cannot specifically recall, demanded of defendant the amounts above set out, or any amount he was able to pay at said various times, on account; but he, the defendant, did invariably promise that he could not pay then but that he could and would pay her up in full for all her services later on, not mentioning any particular time; and particularly in the month of December, 1911, a more specific date plaintiff cannot recall, at the said Fairmont residence, this county and state, said defendant did again promise to pay her in full for all her services, not mentioning any particular amount; but that, defendant not having kept his promises, nor any part of them, plaintiff, in said month of May, to-wit: May 31, 1912, finally quit said employment and terminated her services for the defendant then and there, at said Fairmont, California." It will be noticed that more than two years elapsed from the date when the plaintiff quit the services of defendant to the date of the commencement of her suit. An attempt is made further by the plaintiff to show a course of mutual dealing between plaintiff and defendant so as to bring the account within the characterization of "open, mutual, and current." Before considering the question last suggested, it may be stated that, in our opinion, the contract as made with the defendant was a contract from month to month, notwithstanding she has alleged that the offer was to engage her "for as long a period as the plaintiff should choose to work for defendant, whether

a month or years." Literally considered, the plaintiff's employment under the contract as she alleges it, was for life, unless she chose sooner to terminate it; the defendant had no option in that matter. Such contracts, where the engagement has been asserted to be that for "permanent" employment, are held to mean that it is to continue so long as both parties agree and that either one may terminate it. (*Lord* v. *Goldberg*, 81 Cal. 596, [15 Am. St. Rep. 82, 22 Pac. 1126] ; *Christensen* v. *Pacific Coast Borax Co.*, 26 Or. 302, [38 Pac. 127] ; *Speeder Cycle Co.* v. *Teeter*, 18 Ind. App. 474, [48 N. E. 595].) We are of the opinion that it should be held, under the contract here alleged, that the various sums of money which would become due to plaintiff would accrue at the end of each month during the period of her employment. The "written request" by which the engagement of employment was proposed was made out of the state. The two-year statute of limitation had fully run as against the claims for monthly compensation. The second and third counts in the complaint are statements of the same alleged cause of action framed in general to answer the requirements of common-count pleading. For the reason we have given, the same statute of limitation would apply in bar of those causes of action.

The second question presented is as to whether, under the allegations of the amended complaint, it may be said that a mutual, open, and current account is shown to have existed between plaintiff and defendant, so as to make applicable the four-year statute. (Code Civ. Proc., sec. 337.) We have examined the cases cited by appellant in support of the contention that a mutual account is shown, among them *Santa Rosa Nat. Bank* v. *Barnett*, 125 Cal. 407, [58 Pac. 85], and *Norton* v. *Larco*, 30 Cal. 126, [89 Am. Dec. 70]. In this case plaintiff first alleged, as showing her indebtedness to the defendant, as follows: "That throughout the time the plaintiff worked for defendant as aforesaid, the defendant has allowed the plaintiff, or caused to be paid to the plaintiff, or suffered to be collected by the plaintiff, certain sums of money specifically set out in Exhibit 'A,' made a part of this complaint, to the amount of $748.30, but whether the defendant intended said sums to apply on what the defendant owes and did owe the plaintiff, the plaintiff is unable to state, because there has never been any specific understanding or agreement concerning the same." This allegation follows: "That on the other hand,

plaintiff had loaned and advanced to the defendant small amounts of money at odd times, at defendant's then place of residence, wherever it was, as above set out, between the years January 1st, 1907, to August 1st, 1912, as specifically set out in Exhibit 'A,' and the plaintiff has also transferred and set over to defendant, at defendant's request, various furniture and kitchen utensils belonging to plaintiff, the reasonable value of which was $50, as specifically set out in Exhibit 'A,' the total amount of said open account due from defendant to plaintiff, for money loaned and goods, wares and merchandise as aforesaid, being $170, none of which has ever been paid by defendant to plaintiff.'' As to the sum of money alleged to have been received by the plaintiff, the allegations are in the disjunctive as to how that money was received, but the allegation is positive that there never was any specific understanding or agreement concerning the application of the same. Construing that allegation most strongly against the pleader, where she herself makes no positive allegation regarding the same, we must assume that the money was applied as payment and, if so applied, on amounts which had previously accrued in her favor; and if this was done no reciprocal demand would arise. As said in *Norton* v. *Larco, supra:* ''A payment, whether it be of money or of any article of personal property of a stipulated value, made on account, would not make the account a mutual account consisting of reciprocal demands. . . . '' We have quoted the allegation respecting the other matters alleged to constitute items showing the account to be mutual, open, and current. In our opinion, they do not sufficiently show a course of reciprocal transactions had between the parties within the rule of the cases, and did not relieve the main claim of the plaintiff from the bar of the statute.

The judgment appealed from is affirmed.

Conrey, P. J., and Myers, J., *pro tem.,* concurred.