[L. A. No. 19745. In Bank. May 13, 1947.]

NAT WILK, Appellant, v. CHARLES A. VENCILL et al., Respondents.

Albert G. Bergman for Appellant.

Samuel H. Robinson and Harold M. Heimbaugh for Respondents.

TRAYNOR, J.—This appeal is from a judgment of the superior court dismissing an action for specific performance or damages after defendants' demurrers to plaintiff's fourth amended complaint had been sustained without leave to amend.

The following facts are alleged in the fourth amended complaint. Defendants, husband and wife, are the owners in joint tenancy of a house and lot. On July 24, 1945, plaintiff and defendant husband executed the following agreement:

"Received of Nat Wilk, the sum of Ten Dollars as part payment for my real property located at 425 North Martel Ave., Los Angeles, California.

"The entire price to be paid for the above described property is the sum of Eighty-Nine Hundred Dollars and to be paid as follows:

"Five Thousand Dollars Cash in escrow to be commenced within thirty days after a property settlement agreement is executed between the undersigned seller herein and his wife.

"Also this property to be sold to said Nat Wilk subject to two encumbrances wherein their total unpaid balances is the sum of approximately Thirty-Nine Hundred Dollars.

"Further this within option to purchase the above described property is made with the specific understanding that the *undersign's* wife will surrender possession thereof when and if she is able to procure other living accommodations.

Dated July 24, 1945.<br>Chas. A. Vencill

"I accept the within option.
"July 24, 1945.
Nat Wilk"

Plaintiff gave defendant wife a copy of this agreement and requested that she join in its execution. She stated that she approved of and consented to the sale and agreed to sign the agreement as well as any other documents necessary to the transfer of title. Mrs. Vencill informed plaintiff of marital difficulties between her and her husband and said that they were living apart and were negotiating a property settlement. She stated that she wished to defer execution of the agreement until she and her husband completed their property settlement agreement. She estimated that this would be accomplished in about a week from July 24, 1945, and that immediately thereafter she would sign the agreement to sell the property.

Plaintiff was negotiating to purchase another home for himself and his family in the neighborhood where defendants live. The price was approximately the same as that fixed by defendants for their house, and the two houses were much alike. Plaintiff decided to purchase defendants' house and the other house was subsequently sold to another. When defendants later refused to sell there was no other house available in that neighborhood. Within a day or two after Mr. Vencill signed the agreement to which Mrs. Vencill orally assented, plaintiff made arrangements, in her presence, with painters and contractors to make repairs and improvements to the property. Mrs. Vencill told plaintiff that she was happy that he and his family were going to live in the house and that she preferred them to any other prospective purchasers. She stated that she was sure that they would be

happy in the home after it was redecorated and repaired. The next day she agreed to sell the bedroom rugs to plaintiff, at a price to be fixed when she moved out. Plaintiff spent about two weeks after July 24, 1945, cutting, cleaning and watering the grounds and premises, devoting his time thereto to the exclusion of his law practice. He also expended $10 employing another person to assist him.

Defendants executed their property settlement agreement on or about July 31, 1945, and at that time, or immediately thereafter, plaintiff asked Mrs. Vencill to carry out her agreement. Mrs. Vencill refused, stating that she was arranging to sell the property to others, having been advised that plaintiff could not enforce the performance of her promise.

Plaintiff contends that when Mrs. Vencill made her promise she did so with the secret reservation not to perform and with the intention of misleading and deceiving him. Plaintiff tendered the $5,000 within the prescribed time and the tender was refused. He states that the price of $8,900 is fair and was fair at the time of the execution of the agreement. The defendants agreed to sell the property to another on or about August 15, 1945, for about $9,000, but this sale has not yet been consummated. Plaintiff requests specific performance or, if that is not possible, damages. Both defendants separately demurred generally and specially and their demurrers were sustained without leave to amend.

 Plaintiff contends that although Mrs. Vencill did not sign the contract as required by the statute of frauds (Code Civ. Proc., § 1973; Civ. Code, § 1624), her conduct was sufficient to bar her from invoking the statute. Defendants contend that plaintiff can show only that he relied upon her promise to sign the sales contract and that the failure to comply with a promise cannot serve as a basis for estoppel. The same contention was advanced in *Seymour* v. *Oelrichs*, 156 Cal. 792, 797 [106 P. 88, 134 Am.St.Rep. 154], upon which defendants rely. It was there stated that although the failure to make a writing as agreed is not such fraud as will remove a case from the operation of the statute of frauds, under the doctrine of equitable estoppel "a representation of a future intention, absolute in form, deliberately made for the purpose of influencing the conduct of the other party . . . if acted upon by the other party, is generally the source of a right, and may amount to a contract enforceable as such by a court of equity." (Pp. 797-798.) Plaintiff alleged that

Mrs. Vencill told him that she consented to the sale and that she would sign the agreement in the near future; that in reliance upon her representations and acts he relinquished his opportunity to buy another home in that neighborhood within his price range; and that her words and acts led him to rely upon the security of his agreement. He thereby lost more than the subject of the agreement; he lost the opportunity to purchase another home. ██ Plaintiff does not allege that Mrs. Vencill knew of his opportunity to buy another home, but he states that he can prove that she did and that he requested the trial court to allow him to amend his complaint in order to add this allegation. The failure to make the allegation, however, is not fatal to his statement of a cause of action. The object of Mrs. Vencill's representations was to lead plaintiff to consider himself entitled to buy her house and to regard his search for a family home as ended. She encouraged his preparations to move into her house with his family. Since his change of position was a natural and probable consequence of his reliance upon her representations, it is immaterial whether or not she actually knew of his opportunity to purchase another home in that neighborhood. ██ The doctrine of estoppel is not destructive of the statute of frauds. (*Halsey* v. *Robinson,* 19 Cal.2d 476, 482 [122 P.2d 11].) Without the qualifying doctrine of estoppel in a proper case the statute would encourage rather than prevent the perpetration of frauds. (*Wilson* v. *Bailey,* 8 Cal.2d 416, 422 [65 P.2d 770].) ██ Plaintiff must still establish the truth of his allegations, and if he does not prove the contract, the reliance, and the change of position by a preponderance of the evidence, he cannot recover. (See *Notten* v. *Mensing,* 3 Cal.2d 469, 477 [45 P.2d 198]; *Notten* v. *Mensing,* 20 Cal.App.2d 694, 697 [67 P.2d 734].)

Mr. Vencill contends that if his wife is successful in her defense on the statute of frauds, he cannot be held to the contract on the ground that where one of two joint tenants contracts to sell real estate and the other joint tenant does not execute the contract, the party executing the agreement cannot be compelled to convey his own undivided interest since he contracted to sell the entire property and not simply his undivided interest therein. Assuming that plaintiff cannot sustain his burden of proof as against Mrs. Vencill, it does not follow that plaintiff's complaint against her husband must be dismissed. ██ One joint tenant may dispose of

his interest without the consent of the other. (*Delanoy* v. *Delanoy*, 216 Cal. 23, 26 [13 P.2d 513].) Further, a party may agree to convey more than he possesses and, although he cannot fully perform, specific performance may be available insofar as it is possible. (*Armstrong* v. *Sacramento V. R. Co.*, 52 Cal.App. 110, 116 [198 P. 217]; see 5 Williston on Contracts, § 1436; Rest., Contracts, § 365.) The contract does not show on its face that both joint tenants were to sign. Mr. Vencill, in view of his impending separation, may have intended to convey his interest whatever the decision of his wife. The nature and extent of plaintiff's recovery, if any, against Mr. Vencill will be decided after the facts have been presented to the trial court. It was therefore error to sustain Mr. Vencill's demurrer, regardless of the ruling with respect to his wife.

There are other objections raised by defendants, establishing at most only plaintiff's inability to obtain specific performance. The contract is sufficiently clear in its statement of terms to support a decree of specific performance (*O'Donnell* v. *Lutter*, 68 Cal.App.2d 376, 383 [156 P.2d 958]), and the trial court may require additional clarifications of the pleadings if necessary, or deny specific performance if that remedy is not proper. The complaint is sufficient against a general demurrer, however, and in such a case it is improper to sustain special demurrers without leave to amend. (*Columbia Pictures Corp.* v. *De Toth*, 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747]; *Wilkerson* v. *Seib*, 20 Cal. 2d 556, 564 [127 P.2d 904].)

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.